```
           IN THE UNITED STATES DISTRICT COURT FOR THE
           NORTHERN DISTRICT OF OHIO, CLEVELAND DIVISION

RAYMOND TOWLER,                    )
                                   )
           Plaintiff,              )
                                   )
     v.                            )    Case No. 10 CV 1939
                                   )
RICHARD DeCHANT, FRANK FERRINI,    )    JUDGE CHRISTOPHER BOYKO
KENNETH HERRON, FRANK TAYLOR,      )
and CLEVELAND METROPARKS,          )
                                   )
                                   )    JURY TRIAL DEMANDED
           Defendants.             )
```

## FIRST AMENDED COMPLAINT

Now Comes Plaintiff, RAYMOND TOWLER, by his attorneys, LOEVY & LOEVY, and complaining of Defendants RICHARD DeCHANT, FRANK FERRINI, KENNETH HERRON, FRANK TAYLOR, and CLEVELAND METROPARKS, states:

### Introduction

1.  Plaintiff Raymond Towler was framed for a rape that he did not commit.  He was sentenced to life in prison and served more than 28 years before Cuyahoga County Judge Eileen Gallagher overturned his wrongful conviction on May 5, 2010.  DNA testing, spearheaded by The Ohio Innocence Project, had proved conclusively that Mr. Towler is innocent.  Now, three decades after the crime was committed, prosecutors have reopened the case to try to find the true perpetrator.

2.  The tragedy that took more than half of Mr. Towler's

life from him was entirely avoidable.  His wrongful conviction was the result of police misconduct, including witness manipulation, cover-ups, and fabrication, perpetrated by rangers from the Cleveland Metropolitan Parks Department.

3. Mr. Towler brings this action pursuant to 42 U.S.C. § 1983 and Ohio state law seeking redress for the wrongs done to him, as well as to deter future police misconduct and to reform the improper policies and practices that emboldened the rangers to frame him and violate his rights.

**Jurisdiction and Venue**

4. This Court has jurisdiction of the action pursuant to 28 U.S.C. § 1331.

5. Venue is proper under 28 U.S.C. § 1391(b).  Defendants are individuals who reside here, and the events giving rise to the claims asserted herein all occurred within the district.

**Parties**

6. Plaintiff Raymond Towler is a 53-year-old resident of the State of Ohio.  He is a veteran of the United States Army.

7. Since his release, Mr. Towler has been working as a mail expediter for a medical insurance company.  He is also a renowned painter and musician and earns extra income selling his art and playing music in the Cleveland area.

8. At all times relevant, Defendants Richard DeChant,

Frank Ferrini, Kenneth Herron, and Frank Taylor were rangers employed by the Cleveland Metropolitan Parks District.

9. Defendant Cleveland Metroparks ("Metroparks"), formerly known as Cleveland Metropolitan Parks District, is a municipal entity.  At all relevant times, Metroparks employed Defendants DeChant, Ferrini, Herron, and Taylor.

**Background**

10. In his early 20s, Mr. Towler enlisted in the United States Army.  After receiving an honorable discharge, he was living at home with his extended family and earning money working as a musician.

11. Mr. Towler was also a talented artist.  From time to time, he would go to the Cleveland Memorial Park to seek inspiration for his art, and to reflect on his future.

12. His experiences in the park were not always pleasant. Mr. Towler is black, and the park's patrons were mostly white. The rangers working in the park were unhappy with Mr. Towler's presence there and made him feel unwelcome.

13. On or about May 8, 1981, Mr. Towler's car became stuck in a ravine in the park.  He contacted the rangers for assistance.  They were cold and upset with him.

14. Among the rangers that were present at that time were Defendants Herron, Ferrini, and Taylor.

15.   Each of the Defendants observed Mr. Towler and could see that he wore a full beard.

### The Rape

16.   On May 24, 1981, a rape occurred in the park.  A man lured K.B., a 12 year-old girl, and her male cousin J.W., into the woods in the park.  The man assaulted J.W. and raped K.B.

17.   That man was not Mr. Towler.  In fact, Mr. Towler was not even at the park that day, and he had not been there since May 8.  The DNA testing that exonerated Mr. Towler identified the DNA profile of the perpetrator, and his profile is being checked against known profiles of other criminals, but as of yet, the man remains unidentified.

18.   After the attack was over, J.W. and K.B. spoke with park rangers.  K.B. gave a statement that day describing the perpetrator as a black man with a mustache and glasses.  J.W. also participated in creating a composite sketch which shows the perpetrator to be clean shaven other than the mustache.  K.B. reviewed and confirmed the composite.

19.   At the time, Mr. Towler had a full-grown beard and did not wear glasses.

20.   Mr. Towler suffered from a skin condition that was exacerbated by shaving.  He had worn this beard for over five years as of that time and had even received special permission

4

from the Army to keep the beard due to his medical condition.

21. The rangers also identified two persons who claimed to have been at the park at about the time of the rape and who claimed to have seen a black man in the vicinity of the rape. One claimed to have seen him walking with the two children. Neither of the witnesses stated that this man had a beard.

### Defendants Frame Mr. Towler

22. Early on, Defendants settled on Mr. Towler as their suspect and began shaping the case to fit him.

23. Two weeks after the attack, on or about June 6, 1981, Mr. Towler was driving in the park when Defendants Ferrini and Taylor pulled him over. They asked him to accompany them to the ranger station, ostensibly to write him a ticket for running a stop sign. Mr. Towler complied. Mr. Towler had a full beard at the time.

24. While at the station Defendant Herron questioned Mr. Towler about how long he had had his beard. The Defendants also took a photograph of Mr. Towler. As he was leaving the station, Mr. Towler noticed a note on the bulletin board, directing the rangers to take a picture of Mr. Towler if they found him.

25. Following this encounter, the Defendants began working on the victims and the witnesses to modify their accounts of the perpetrator. They fed information to the witnesses and

manipulated them into giving an account that the perpetrator had "the beginnings" of a beard. Defendants manufactured this explanation for the witnesses in order to account for the discrepancy between their contemporaneous descriptions of the perpetrator and the fact that Mr. Towler had a full-grown beard.

26. Defendants covered up these manipulations, and others, from the prosecutors and Mr. Towler's defense attorneys. As a result, Defendants deprived Mr. Towler of the ability to prove at his criminal trial that he was innocent and that the rape had been committed by someone else. Defendants' misconduct also left the true perpetrator at large to prey on other victims. To this day, it is unknown how many other people have been victimized by this rapist.

27. Defendants also used suggestive techniques to coach the witnesses to identify Mr. Towler's picture, thereby tainting their identifications of him both pretrial and at trial. These Defendants covered up their manipulation of these witnesses from prosecutors and Mr. Towler's publicly appointed defense attorney.

28. Indeed, some of the witnesses initially picked the pictures of persons other than Mr. Towler, and Defendants covered-up these "mistaken" identifications and failed to preserve the information about the pictures which the witnesses

picked other than Mr. Towler. This information was exculpatory and should have been provided to the prosecutors but was not.

29. Defendant Herron served as a prosecuting witness at trial. He committed perjury at the trial by misstating exculpatory events in the investigation, including the witness descriptions and interviews, the identification procedures used, and the state of growth of Mr. Towler's beard during his interactions with the rangers on or about May 8. Further, Herron, DeChant, Ferrini, and Taylor covered up the information about the state of growth of Mr. Towler's beard on or about May 8 from the prosecutor and affirmatively misrepresented the state of Mr. Towler's beard to the prosecutor.

30. As a result of all of the above, the information and documents which would have cast doubt on the allegations against Plaintiff and which would have helped him to prove that he was innocent of the rape were suppressed.

**Mr. Towler's Wrongful Conviction**

31. Numerous family members and family friends who had been with Mr. Towler on May 24 testified as alibi witnesses at the trial. They also testified to the fact that, as of May 24, Mr. Towler had a full grown beard that he had been wearing for years.

32. On the basis of the falsified evidence that Defendants

created, plus the absence of the exculpatory evidence that Defendants suppressed, Mr. Towler was falsely convicted for the crime of which he was innocent.

33. Following the unjust conviction, Mr. Towler was sentenced to life imprisonment. The false prosecution and conviction, and his imprisonment for almost 30 years on charges of committing crimes against children, have injured him profoundly and forever.

**COUNT I:   42 USC § 1983 – SUPPRESSION OF EXCULPATORY MATERIAL**

34. Plaintiff incorporates each of the allegations of this complaint as if fully set forth herein.

35. Defendants DeChant, Ferrini, Herron, and Taylor, acting individually and in conspiracy with each other, destroyed and withheld exculpatory information and material from the prosecution and, thus, from Plaintiff.

36. As a result of these violations, Plaintiff was deprived of his right to a fair trial and was falsely convicted for a crime of which he was innocent.

37. Defendants DeChant, Ferrini, Herron, and Taylor were acting under color of law and within the scope of their employment when they took these acts.

38. The individual Defendants' conduct also resulted from

improper customs and policies of Metroparks.

39. In particular, Metroparks did not train or supervise its rangers regarding the constitutional requirements for disclosing exculpatory and impeachment information to prosecutors when they possessed such information. As a result, the individual Defendants failed to disclose exculpatory and impeachment information, including but not limited to exculpatory suspect descriptions and identifications, witness manipulations, and their own observations of Mr. Towler's facial hair on or about May 8. Similarly, Metroparks failed to maintain and implement policies requiring the disclosure of exculpatory and impeachment information, thus leaving its rangers to withhold such information in a manner that causes wrongful convictions.

40. Plaintiff suffered actual damages, pain and suffering, lost wages, and other damages as a direct and proximate result.

**COUNT II: 42 USC § 1983 – SUGGESTIVE IDENTIFICATIONS**

41. Plaintiff incorporates each of the allegations of this complaint as if fully set forth herein.

42. Defendants Herron and Taylor, acting individually and in conspiracy with each other and Defendants DeChant and Ferrini, used improper and suggestive procedures to cause

9

Plaintiff to be misidentified as the perpetrator. This misconduct tainted the pretrial identifications of Mr. Towler, which identifications were offered against him at trial, and the in-court identifications during his trial.

43. As a result of these violations, Plaintiff was deprived of his right to a fair trial and was falsely convicted for a crime of which he was innocent.

44. Defendants DeChant, Ferrini, Herron, and Taylor were acting under color of law and within the scope of their employment when they took these acts.

45. The individual Defendants' conduct also resulted from improper customs and policies of Metroparks.

46. In particular, Metroparks did not train or supervise its rangers regarding the constitutionally appropriate methods for conducting witness identification procedures. As a result, the individual Defendants used procedures that were overly suggestive and/or misleading and which caused the false identification of Mr. Towler. Similarly, Metroparks failed to maintain and implement policies requiring proper witness identification procedures, leaving its employees to conduct such procedures in a manner that causes false identifications.

47. Plaintiff suffered actual damages, pain and suffering, lost wages, and other damages as a direct and proximate result.

**COUNT III:   42 USC § 1983 – FABRICATED EVIDENCE**

48.  Plaintiff incorporates each of the allegations of this complaint as if fully set forth herein.

49.  Defendant Herron, acting in conspiracy with Defendants DeChant, Ferrini, and Taylor, fabricated and altered evidence, including without limitation, police reports, testimony of the witnesses, and his own testimony.

50.  As a prosecuting witness, Herron has no immunity for this misconduct.

51.  As a result of these violations, Plaintiff was deprived of his right to a fair trial and was falsely convicted of a crime of which he was innocent.

52.  Defendants DeChant, Ferrini, Herron, and Taylor were acting under color of law and within the scope of their employment when they took these acts.

53.  The individual Defendants' conduct also resulted from improper customs and policies of Metroparks.

54.  In particular, Metroparks did not train or supervise its rangers regarding the constitutional prohibitions against fabricating or altering evidence.  As a result, the individual Defendants fabricated or altered evidence, which led to the false conviction of Mr. Towler.  Similarly, Metroparks failed to maintain and implement policies prohibiting the fabrication or

11

alteration of evidence, leaving its employees to fabricate or alter evidence in a manner that causes false convictions.

55. Plaintiff suffered actual damages, pain and suffering, lost wages, and other damages as a direct and proximate result.

### COUNT IV: MALICIOUS PROSECUTION

56. Plaintiff incorporates each of the allegations of this complaint as if fully set forth herein.

57. Defendants DeChant, Herron, Ferrini, and Taylor, acting individually and in conspiracy, instigated and continued the prosecution of Plaintiff without probable cause and acting out of malice.

58. On May 5, 2010, the prosecution was finally terminated in Plaintiff's favor.

59. As a result of the malicious prosecution, Plaintiff was falsely convicted of a crime of which he was innocent.

60. Defendants were acting under color of law and within the scope of their employment when they took these acts.

61. Plaintiff suffered actual damages, pain and suffering, lost wages, and other damages as a direct and proximate result.

62. All of the actions of Defendants DeChant, Ferrini, Herron, and Taylor were taken within the scope of their employment with Metroparks. As a result, Metroparks is liable

for all of their conduct pursuant to the doctrine of *respondeat superior.*

### COUNT V: INFLICTION OF EMOTIONAL DISTRESS

63.   Plaintiff incorporates each of the allegations of this complaint as if fully set forth herein.

64.   Defendants DeChant, Herron, Ferrini, and Taylor, acting individually and in conspiracy, intentionally and/or recklessly engaged in extreme and outrageous conduct that caused Plaintiff severe emotional distress and also bodily harm from his distress.

65.   Defendants were acting under color of law and within the scope of their employment when they took these acts.

66.   Plaintiff suffered actual damages, pain and suffering, lost wages, and other damages as a direct and proximate result.

67.   All of the actions of Defendants DeChant, Ferrini, Herron, and Taylor were taken within the scope of their employment with Metroparks.  As a result, Metroparks is liable for all of their conduct pursuant to the doctrine of *respondeat superior.*

13

WHEREFORE, Plaintiff RAYMOND TOWLER respectfully demands judgment against Defendants RICHARD DeCHANT, FRANK FERRINI, KENNETH HERRON, FRANK TAYLOR, and CLEVELAND METROPARKS, awarding actual and punitive damages as well as his costs and attorneys' fees incurred in pursuing this action, and any other relief to which he may appear entitled.

**JURY DEMAND**

Plaintiff, RAYMOND TOWLER, hereby demands a trial by jury pursuant to Federal Rule of Civil Procedure 38(b) on all issues so triable.

                        RESPECTFULLY SUBMITTED,

                        /s/ Michael Kanovitz
                        Attorney for Plaintiff

Arthur Loevy
Michael Kanovitz
Jon Loevy
Roshna Bala Keen
LOEVY & LOEVY
312 North May Street
Suite 100
Chicago, IL 60607
(312) 243-5900

Michele L. Berry
114 East 8th Street
Cincinnati, OH 45202
(513) 919-5315

**CERTIFICATE OF SERVICE**

    The undersigned hereby certifies that a true and accurate copy of the foregoing was served on January 13, 2011 upon all counsel of record who have registered with CM/ECF via the Court's electronic filing system, and on newly added Defendant Cleveland Metroparks via hand delivery.

/s/ Michael Kanovitz

LOEVY & LOEVY
312 North May Street
Suite 100
Chicago, IL 60607
(312) 243-5900